O'Donnell *v.* S. Fayette Twp. School District et al., Appellants.

Argued April 27, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUN-
NINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Richard W. Greer*, and with him *John C. Sherriff,
Paul E. Hutchinson* of *Sherriff, Lindsay, Weis &
Hutchinson,* for appellants, cited: Lente v. Luci, 275
Pa. 217; Schwartz v. Hanover Borough, 278 Pa. 134.

*Arthur L. McLaughlin, Jr.,* for appellee, cited: Berkis
v. Lehigh Valley Coal Co., 273 Pa. 243; Clark v. Clear-
field Opera House Co., 275 Pa. 244.

OPINION BY PARKER, J., July 14, 1932:

This is a proceeding under the workmen's compensation statutes in which an award was made in favor of the claimant and affirmed by the board and the lower court. The claimant, Ellen O'Donnell, about one week prior to the opening of school, entered into an oral contract with the South Fayette Township School District to clean a schoolroom before the following Monday, for a consideration of $10. While engaged in the cleaning of the room, the claimant fell from a chair which resulted in a fracture of the neck of the femur.

The appellants maintain that the judgment should be reversed for the reasons that (1) the claimant was an independent contractor, (2) there is no testimony to support the finding that claimant's weekly wage was $20, (3) claimant should not be awarded compensation for total disability as she has suffered the loss of the use of a leg compensable, if at all, under Section 306-c of the Workmen's Compensation Act.

Was the claimant an independent contractor? "Neither the compensation authorities nor the courts should be solicitous to put claimants in that position (independent contractor) when a reasonable view of the evidence warrants a finding that the injured person was an employee": Gailey v. State Insurance Fund, 286 Pa. 311, 314. It seems, however, that the reasons for holding that the relationship of master and servant existed are compelling. Whether we test the question by the general canons for construction of informal oral agreements or examine the evidence in the light of all of the decisions of the appellate court, we are led to the same conclusion.

Before examining the testimony, we will note that there is not any disagreement between the parties as to the fundamental test for determining whether one is an independent contractor or a servant. "The re-

lation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done": McColligan v. P. R. R. Co., 214 Pa. 229. "On the other hand, where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant": Mooney v. Weidner, 102 Pa. Superior Ct. 411, 415.

The president of the school district testified that Mrs. O'Donnell's wages were included in determining the amount of premium paid to the insurance company and that the board considered Mrs. O'Donnell an employee of the school board. In the case of Gailey v. State Workmen's Insurance Fund, 286 Pa. 311, 316 it was said: "The owners of the mine testified that they considered Gailey an employee; and their action in securing compensation insurance to cover him and the five other men in the mine was some evidence to be considered by the referee in concluding that deceased was a specially compensated foreman rather than an independent contractor." This was an informal contract in the construction of which it is proper to adopt the sense in which the party using the words should reasonably have apprehended they would be understood by the other party. See Williston on Contracts, Sec. 603. Mrs. O'Donnell stated: "He asked me if I would clean the school and I said, 'All right, I'll clean it.' He gave $10 but if I did not do the work right, he didn't want me." In answer to a direct inquiry the president states that he had the power to discharge any workmen who did not do the work properly or require them to do it over. It also appears from the

evidence that, while Mrs. O'Donnell had only worked about three hours when she was injured, the president of the board had been there that morning and that he called a number of times while rooms were being cleaned by other women, working on similar contracts. He designated the way in which the room was to be cleaned. The right to remove and discharge is one of the tests in determining whether the relationship of master and servant exists: McColligan v. P. R. R. Co., 214 Pa. 229, 232. This woman had been employed the two previous years to do the same work and three other women were similarly employed and the compensation paid them was taken into account in determining the insurance premiums. "And the mere fact that he was paid, instead of fixed wages, a certain price on each ton of coal taken from the mine, and that, out of this price, he paid others, did not necessarily deprive him of the position of an employee": Gailey v. State Insurance Fund, supra.

The terms of the contract between the claimant and the school district were informal, as such contracts usually are, and provided for the cleaning of certain schoolrooms and the completion of the work before the opening of school on the following Monday morning. If Mrs. O'Donnell had been employed at a fixed price per week to clean the schoolroom, there would not have been any question as to her status as a servant. She was not engaged generally in the business of taking contracts of cleaning and this hiring differed only from that of a hiring for a specified wage in that she was given approximately a week to complete the work and was to be paid in a lump sum. It was testified that this was done in order that she might perform the work at intervals without interfering with other duties. There are not present the usual conditions that exist when the relationship is that of an independent contractor. Taking into consideration the

interpretation which the parties themselves have placed upon the contract, the character of the labor performed, and the fact that such contracts are almost invariably informal, we are convinced that the relationship of master and servant existed.

The appellants next contend that there was not sufficient evidence to warrant the finding that the weekly wage of the claimant was $20 per week and argue that the only proper basis for a finding in such a case would be the average weekly amount earned by other persons employed by the same employer under similar contracts of hiring or, if there were no persons so employed, by other persons employed by other employers under similar contracts of hiring.

The Act of June 2, 1915, P. L. 736, Article III, as amended by the Act of June 26, 1919, P. L. 642 provides with relation to a hiring of the kind we are considering: "In cases where the employe has been in the employ of the employer less than one full week, and by reason of the shortness of time during which the employe has been in the employment of the employer or the nature or terms of the employment it is impracticable to ascertain the average weekly wages as hereinbefore provided, the average weekly amount which during the six months previous to the injury has been earned by other persons employed by the same employer under similar contracts of hiring, or, if there are no persons so employed, by other persons employed by other employers under similar contracts of hiring under similar conditions, shall be taken as the basis for the ascertainment of the weekly wages of such employe." By the preceding portion of this section it is provided: "Wherever in this article the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." There follow provisions with

relation to gratuities, seasonable occupations and continuous employments. The service performed by claimant was not seasonal (Froehly v. Harton, 291 Pa. 157) and by its very terms was not continuous.

There was competent testimony from which the referee and Workmen's Compensation Board could find that the labor agreed to be performed could be done in three days. It also appeared by the uncontradicted evidence that three other rooms in the school building were let to other persons at the same time and at the same rate and that this same plan had been followed in the two preceding years. From this the referee and board found that the weekly wage for the purpose of determining compensation was $20.

It was not possible to furnish any better evidence as to the price paid during the previous six months by the same employer under similar contracts of hiring than was here supplied. It is not reasonable to assume that any aid could have been obtained from a consideration of what others were paid under similar contracts of hiring and conditions. The most that could be expected was information as to what house cleaners or scrub women received. We doubt whether that would have furnished as satisfactory a basis for determining the compensation to which she was entitled as the method employed by referee and board, "It was the purpose of the legislature to vest those who administer the Workmen's Compensation Law with broad discretion in the ascertainment of facts": Jensen v. Atl. Rfg. Co., 262 Pa. 374, 379. We are not convinced that under the peculiar facts of this case there was any error in adopting the method used.

The third position of the appellants is thus stated in the brief: "The claimant has suffered the loss of a specified member with no disability in addition thereto and must be compensated, if at all, exclusively under sub-section c, section 306 of the act." The question

raised is ruled by the decisions of the Supreme Court in Lente v. Luci, 275 Pa. 217, and Clark v. Clearfield Opera House Co., 275 Pa. 244. In the Lente case at page 219 it was said: ''Paragraph (c) fixes the total compensation for permanent injuries to certain parts of the body. Under it must be considered all disability 'resulting from' or related to permanent injuries, and the compensation for such injuries shall be 'exclusively' as therein provided. It will be noted the governing feature in this paragraph is a *permanent injury,* while in the former paragraphs the governing feature is a disability from an injury....... In other words, this legislative mandate fixed the amount to be paid in such cases without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all...... The compensation mentioned is restricted by precise language, regardless of the fact that a permanent injury might otherwise affect capacity to work. The standard thus fixed is in the nature of compensation for the damage resulting from the loss of the members there named, without regard to personal capacity to labor or loss of earning power ......Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body produced by the permanent injury, causing a disability separate, apart and distinct from that mentioned in paragraph (c)...... But, in these cases, where it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury; the causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under paragraph (c), and must endure beyond the time therein mentioned. There must be a destruction, derangement or deficiency in the organs of the other parts of

the body. It does not include pain, annoyance, inconveniences, disability to work or anything that may come under the term 'all disability,' or normally resulting from the permanent injury.''

An examination of the testimony fails to disclose any evidence which would show ''a destruction, derangement or deficiency in the organs of the other parts of the body'' which has caused a total disability. The claimant at one point in her testimony stated that she was affected around the small of the back, but later states that her pain was confined to her knee. A doctor was called by both the claimant and the defendant. Dr. Kocher, a witness for the claimant, gave the following evidence: ''Q. Doctor, from your prior treatment of Mrs. O'Donnell and your examination yesterday, do you see any injuries she has sustained or now has other than the injuries to the leg? In other words, is there anything else you found that contributes to her disability other than the injury to her leg? A. No.'' Dr. Landon, called by the defendant stated: ''Q. So for that reason you consider the disability all confined to the leg? A. It is confined to the loss of the use of her leg.''

The appellee relies upon the case of Clark v. Clearfield Opera House Co., supra. The case is clearly distinguishable from the present case for there, as the court points out, the injury covered a wider area and extended beyond the leg proper. In other words, there was present the distinguishing feature that there was a derangement in the organs of the other parts of the body in addition to that which naturally arose from the loss of the use of the leg.

There being no sufficient evidence to sustain a finding of total disability, apart from the use of the leg, we next note that there is no specific finding which will sustain an award under subsection c for the loss of a member. There has not been an amputation and there

must therefore necessarily be a specific finding that there is permanent loss of the use of the leg. This case having been considered upon an incorrect theory by both the referee and the board, substantial justice can only be done by remitting the record to the board for further hearing when the claimant may have an opportunity to furnish, if the facts warrant it, evidence of total disability apart from the injury to the leg or if such is not the case, that it may be determined whether there is permanent loss of the use of the leg which would entitle her to compensation under sub-section c. We also call attention to the fact that the court did not enter the proper judgment in this case. Sec. 427 of the Workmen's Compensation Act provides that if the court of common pleas shall affirm an award or order of the board or referee sustained by the board, fixing compensation, then the court shall enter judgment for the total amount stated by the award or order to be payable, whether then due and accrued or payable in future installments. Miller v. Pgh. Coal Co., 77 Pa. Superior Ct. 51, 55.

The judgment of the lower court is reversed and it is directed that the said court shall remit the record to the board for further hearing and determination in accordance with this opinion.