Yahnert *v.* Logan Coal Company (Eureka Casualty Company, Appellant).

Argued October 11, 1937. 

 Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ. 

*Francis A. Dunn,* for appellant.

*M. Vashti Burr,* with her *Howard W. Stull* and *Penrose Hertzler,* for appellee.

OPINION BY CUNNINGHAM, J., December 17, 1937:

The judgment appealed from in this workmen's compensation case was entered by the court below upon an award to the widow of William Yahnert, in her own right and on behalf of six dependent children of the decedent. It was averred in the claim petition that the husband and father was instantly killed on the afternoon of March 1, 1934, by an explosion which occurred while he was engaged, along with other workmen, in endeavoring to remove ice with carbide from an air shaft into the Beaverdale Mine of the Logan Coal Company in Cambria County. The description of the accident given in the claim petition reads: "While working

over the mouth of the ventilating shaft an explosion occurred in the shaft throwing the deceased into the air and killing him instantly." Yahnert had been employed by the coal company upon several occasions to paint certain smoke stacks and remove others; the designation of his occupation was "rigger."

A double barreled defense was interposed by the answer: (1) That Yahnert was an independent contractor and not an employee of the coal company, within the meaning of section 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §22; and (2) Even if an employee, his employment was "casual in character and not in the regular course of the business of the employer."

This claim was heard before the referee along with a separate claim of an adult son of the decedent who was disfigured and temporarily disabled by the same accident; no appeal was taken from the judgment entered upon the award to the son and we are here concerned only with the liability of the employer and its insurance carrier to the widow and dependent children. The referee disallowed compensation upon the theory that the decedent was an independent contractor and not an employee. Upon appeal to the board the disallowance was affirmed. The widow then petitioned for a rehearing, which was granted; the board, as then constituted and without taking any additional testimony, set aside a number of the referee's findings of fact, substituted its own and made the award upon which the judgment now appealed from was entered. The following material findings of fact were made by the board:

"Third: That for two or three days prior to March 1, 1934, the air shaft to the mine of the Logan Coal Company had been frozen shut with an accumulation of ice, preventing the passage of air into the mine; that on the morning of March 1, 1934, the officials of the Logan Coal Company engaged the decedent to go down this

air shaft and to open it up; that the decedent proceeded to Beaverdale, taking with him two other men, his son, William James Yahnert, who was also employed by defendant for this occasion, and who was injured in this same accident, and Clyde C. Kelly, who met his death in the accident; that they took with them blocks and tackle and such equipment as is used for this special kind of work, which equipment all was owned by the decedent; that the three men, together with the equipment, were taken to Beaverdale in an automobile driven by Elmer Williams, an official of the Logan Coal Company, who appeared at the home of the decedent that morning to engage him for the above mentioned work; that at Beaverdale the decedent conferred with John W. Harrison, the general superintendent of the Logan Coal Company, as to the work to be done, and upon the suggestion of the decedent, carbide was furnished him for his use in freeing the air shaft of ice; that the general superintendent also furnished the decedent with safety lamps upon the suggestion of the decedent; that the decedent with his two men, Clyde C. Kelly and William James Yahnert, then proceeded to the air shaft, arriving there about 10:30 A. M.; that the Logan Coal Company already had their mine foreman at the air shaft with two of the company's regular employees for the purpose of assisting the decedent in his work; that after the decedent and his two men arrived at the shaft they proceeded to erect the necessary rigging over the top of the shaft to permit the decedent to go down; that the decedent did go down the shaft, and returned; that one hundred pounds of carbide was then dumped into the shaft and for some unknown reason an explosion occurred which resulted in the death of the decedent.

"While this was the first occasion for five years that this air shaft had frozen completely shut, it did freeze over to a greater or less extent frequently in winter and had to be opened up by defendant's regular employees

in order that defendant's operations might continue, and on the very day of the accident some of the defendant's regular employees had been engaged in this work, both before and after decedent and his son were hired for the job."

The two regular employees referred to were Fennell and Berish; both were killed by the explosion. Upon the first question of law involved under this appeal the board set aside the conclusion of the referee and substituted the following: "1. That the decedent, William Yahnert, was an employee of the Logan Coal Company at the time of this accident."

The company's general superintendent testified he and the decedent had a "thorough discussion" about the method of doing the work suggested by decedent, namely, that "he would take a bar and make holes in the ice and put the carbide in it." When the superintendent suggested that method would create considerable gas and asked decedent how he would take care of himself in going down into the shaft, his reply was, "I usually arrange that with a safety lamp." Upon this assurance the superintendent authorized decedent to "go ahead." A question and answer of this official while upon cross-examination read: "Q. Now, you had the authority, Mr. Harrison, to prevent the use of carbide in this operation? A. O yes, I could have stopped it, certainly." The decedent's son testified the explosion occurred while he was opening the cans of carbide and his father was pouring it down the shaft.

We agree with the holding of the board and the court below that the facts in this case warrant the conclusion that decedent was an employee and not an independent contractor. The employer was not concerned merely with the result of the work but, through its officials, had the right to, and did, exercise control over the manner of doing the job. As pointed out by the board, the employer supplied practically all the instrumen-

talities necessary for the performance of the work, other than the blocks and tackle which decedent brought with him. Its superintendent directed decedent and his assistants when to report, and the work was stopped during the absence of this official at noon. The employer also furnished a number of its regular employees to work with the decedent. The testimony justifies this language in the opinion of GREER, J., speaking for the court below: "The employment upon which Yahnert was called was ...... the work of assisting the employees of the defendant company by his expert skill to solve a difficult problem, and this at the solicitation of the outside foreman, concurred in and validated by the superintendent of the mine himself, who was present during the operation and held the control thereof in the hollow of his hand. His was the power to compel the operation to cease at any time, and with him discussion was had as to ways and means, and in that discussion the superintendent acquiesced in the method on the part of deceased according to which the work was carried on, resulting in his death."

In our opinion, the case now at bar falls within the principles laid down in such cases as *Gailey v. State Workmen's Insurance Fund et al.,* 286 Pa. 311, 133 A. 498; *Flaharty v. Trout et al.,* 290 Pa. 315, 138 A. 863, and cases there cited at p. 318. The fact that decedent was employed irregularly and for a lump sum did not make him an independent contractor; *O'Donnell v. S. Fayette Twp. School District et al.,* 105 Pa. Superior Ct. 488, 161 A. 887.

In taking up the second contention it is to be noted that the above referred to section of the statute provides: "The term 'employe' as used in this act is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regu-

lar course of the business of the employer, ......" It is unnecessary to cite authorities for the proposition that in order to exclude an employee from the benefits of the statute his services must have been not only casual in character but also rendered outside of the regular course of the business of the employer. Here, it is conceded that decedent's employment was casual; the controlling question, however, is whether his services were rendered in the regular course of the business of the coal company. The board held in its second conclusion of law that "while the employment was casual, it was in the regular course of the employer's business."

Our conclusion is that the facts of this case bring it within the principles announced in *Hauger v. Walker Co. et al.,* 277 Pa. 506, 121 A. 200. There, the repairing of the employer's machinery was held to be a part of the regular course of its business and it had a factory foreman who was charged with the duty of keeping the plant in operation by making such small repairs as he could by himself or with the assistance of other workmen in its regular employ. Necessity arose for a major job of repairing and the foreman called in the husband of the claimant, an expert machinist, to assist in making the repairs. While engaged in the performance of that work he was killed; it was held that his widow was entitled to compensation.

Here, the keeping open of the air shaft was essential to the operation of the mine and specifically required by the provisions of the Bituminous Mine Law of June 9, 1911, P. L. 756, 779, 52 PS §1011. This record discloses, as stated in the above findings of the board, that although this was the first occasion within five years upon which the shaft had been completely closed by the formation of ice, it had frequently been necessary in the past to remove ice which interfered with its functions. Berish and Fennell were the regular employees assigned by the foreman to the performance of that

duty. They had attempted to remove the ice which had accumulated during the cold days preceding the accident by using dynamite, but were unsuccessful. As in the Hauger case, the officials of the company called in the decedent who was known to them as an expert in painting and removing stacks, and who, upon one occasion at least, had opened a frozen air shaft at another mine. Moreover, the regular employees of the coal company were assisting the decedent at the time of the explosion.

Appellants cite and rely upon *Callihan v. Montgomery,* 272 Pa. 56, 115 A. 889. We think the present case is distinguishable. Maintenance of an open air shaft was not only a statutory duty but obviously necessary in the normal operation of the employer's business. The removal of ice, from time to time, was a matter usually performed by the company's regular employees, under the supervision of its superintendent and foreman; it was by no means an "odd job" such as was involved in the Callihan case.

For the reasons stated we are convinced the court below did not err in dismissing the appeal of the employer and its carrier and entering judgment upon the award.

Judgment affirmed.