## Cramer v. East Shore Materials, Inc.

*Arthur Berman*, for plaintiff.

*James K. Thomas* and *Francis J. O'Gorman*, for defendant.

MILLER, J., July 29, 1963.—In this trespass action, Paul Cramer (Cramer), an individual residing in Susquehanna Township, Dauphin County, seeks recovery for personal injuries which he allegedly sustained when his vehicle collided with a vehicle being operated on behalf of the corporate defendant's predecessor on February 7, 1961. The corporate defendant is East Shore Materials, Inc. (East Shore), formerly known as McIntosh Road Materials Co., Inc. (McIntosh).

In response to the complaint, East Shore filed an answer, with new matter, wherein it first denied the alleged agency of its operator at the time of the accident, averring instead that he was either operating the vehicle on his personal business, or in the alternative, was the agent, servant, or employe of plaintiff. Defendant then averred certain new matters, which may be summarized as follows:

1. At the time of the accident, Cramer was the receiver of McIntosh, having been appointed pursuant to an arrangement proceeding under chapter XI of the Bankruptcy Act of July 1, 1898, c. 575, as amended; that the proposed arrangement was confirmed on April 28, 1961, and that Cramer having actual knowledge of the arrangement proceeding, had an opportunity to file a claim for the cause of action but did not do so; consequently, he is barred by the arrangement

proceeding and the relevant portions of the Bankruptcy Act.

2. Cramer at the time of the accident was performing a valuable service for McIntosh, and was therefore its employe; consequently, recovery is barred by the provisions of the Pennsylvania Workmens' Compensation Act.

3. Cramer as the receiver of defendant was, alternatively, the principal, employer and party in charge, direction and control of defendant's agents, employes and servants and, as such, was the person in direction and control of the employe who was driving defendant's vehicle at the time of the accident; consequently, no cause of action arose in favor of plaintiff.

Cramer filed two preliminary objections to this new matter; the one requesting a more specific pleading of certain particulars, and the second being a demurrer to the new matter. This opinion will dispose of Cramer's preliminary objections.

1. Is plaintiff's claim barred by the previous bankruptcy and arrangement proceeding?

By his demurrer to the new matter pleaded in defendant's answer, Cramer has admitted all of the factual averments contained therein, and we must resolve all the inferences logically deducible therefrom in favor of defendant. However, plaintiff has not admitted any legal conclusions: Savitz v. Weinstein, 395 Pa. 173 (1959) ; Adams v. Speckman, 385 Pa. 308 (1956). Thus, Cramer admits that he was appointed receiver in bankruptcy of McIntosh Road Materials Co., Inc., East Shore's predecessor, on January 5, 1961, and that he continued to serve in such capacity until May 5, 1961. It does not appear whether McIntosh entered bankruptcy voluntarily or involuntarily, but the pleadings establish that the bankruptcy was converted into an arrangement proceeding under chapter XI of the Bankruptcy Act on January 30, 1961,

and the first meeting of creditors of McIntosh was held February 17, 1961, pursuant to the petition for an arrangement. On April 28, 1961, the proposed arrangement, as amended, was confirmed, and we may logically infer that the corporate operations continued thereafter and that, sometime subsequent to the confirmation of the arrangement, the corporate name was changed from McIntosh Road Materials Co., Inc., to the present name, East Shore Materials, Inc. Further, because it is not otherwise pleaded, we also infer that no other changes were made in the structure of the corporate entity and that the present defendant is the legal successor to all of the rights, duties and liabilities of McIntosh.

Under this factual background, it now becomes necessary to determine whether Cramer's claim for personal injuries against the corporation for the liability sought to be imputed to it by the alleged negligence of its servant, agent or employe, was discharged by the bankruptcy and the arrangement proceeding. There is no question that a negligence claim is provable under the Bankruptcy Act. Section 302 of chapter XI, 11 U. S. C. A. §702, pertaining to arrangement proceedings, provides that:

"The provisions of chapters 1 to 7, inclusive, of this title [the Bankruptcy Act] shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter, apply in proceedings under this chapter. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors,' and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter . . . ."

Consequently, in order to determine what debts are provable in an arrangement proceeding, reference must be had to section 63a(7) of the Bankruptcy Act, 11 U. S. C. A. §103a, which provides that "Debts of

the bankrupt may be proved and allowed against his estate which are founded upon . . . (7) the right to recover damages in any action for negligence instituted prior to and pending at the time of the filing of the petition in bankruptcy; . . ."

Here, the original petition in bankruptcy was filed January 5, 1961, and it was converted to an arrangement proceeding under chapter XI by the petition and schedule in arrangement proceedings filed on January 30, 1961. Both of these events occurred prior to the date plaintiff's cause of action arose, which was February 7, 1961. Thus, plaintiff did not have a "right to recover damages in an action for negligence", nor could such action have been "instituted and pending", either at the time McIntosh was adjudicated a bankrupt on January 5, or at the time the arrangement petition was filed on January 30, 1961. In view of section 63a(7), supra, it appears that plaintiff's claim was not provable in either the original bankruptcy, or the subsequent arrangement proceeding, and it should not be barred here on the ground that McIntosh was discharged from such obligation by confirmation of the arrangement.

Before this conclusion can be drawn with finality, we must be certain that none of the provisions of chapter XI are in conflict with section 63a(7), supra, pertaining to the proving and allowance of negligence claims. It should be noted that under section 307 of chapter XI, 11 U. S. C. A. §707, . . . "for the purposes of an arrangement providing for an extension of time for payment of debts in full and applicable exclusively to the debts to be extended . . . (2) 'debts' or 'claims' shall include all unsecured debts, demands, or claims of whatever character against a debtor, whether or not provable as debts under section 103 of this title and whether liquidated or unliquidated, fixed or contingent." (Italics supplied.)

Thus, where the arrangement proceeding is one that provides for an extension of time to the debtor for payment of all debts in full, an unliquidated negligence claim such as Cramer's would be provable, even though his action were not actually instituted and pending at the time the arrangement proceeding commenced. The facts, as here pleaded, do not indicate whether this was an arrangement by way of extension or composition, but as we shall see hereafter, this distinction need not be established.

What must be first determined is the last date when Cramer's unliquidated personal injury claim was susceptible of proof and allowance in the arrangement proceeding. In bankruptcy parlance, this depends upon the "date . . ." or "time of cleavage", which means the cut-off date for the incurring of claims, or liability, which are discharged by the arrangement proceeding. To state it another way, it is the date after which no subsequently incurred debts may be proved or allowed. In the ordinary voluntary or involuntary bankruptcy proceeding, the "date of cleavage" is the date of filing the petition in bankruptcy: Section 63 of the Bankruptcy Act, supra. Arrangement proceedings under chapter XI may be commenced in one of two ways. Under section 321 of chapter XI, 11 U. S. C. A. §721, the petition for arrangement may be filed in a pending bankruptcy proceeding either before or after adjudication. Under section 322, 11 U. S. C. A. §722, an original petition for arrangement may be filed with the court which would have jurisdiction of a petition for adjudication of bankruptcy, even though no bankruptcy is pending. Under the facts as pleaded, it appears that this is a section 321 arrangement, in that the bankruptcy petition had been filed on January 5, 1961, and Cramer appointed a receiver on that date, while the petition and schedule in arrangement proceedings was not filed until sometime thereafter, to

wit, January 30, 1961. What is the "date of cleavage" in this section 321 arrangement proceeding? This answer is found in 9 Collier on Bankruptcy 22 (14th Edition, 1963), as follows:

"The references in §63a to the date or time of the filing of the petition in bankruptcy must be taken to mean, in a §322 case, the date of the filing of the original petition for relief under Chapter XI; in a §321 case, those references are not adapted for the purposes of Chapter XI, but they continue to relate to the date of the filing of the bankruptcy petition, and do not relate to the date of the filing of the petition pursuant to §321 of Chapter XI. Thus, the general time of cleavage, insofar as determining whether a person is a creditor, is the date of the filing of the Chapter XI petition in a §322 case, but is the date of the filing of the bankruptcy petition, not the Chapter XI petition, in a §321 case."

Case authority also substantiates that claims in a proceeding under chapter XI are fixed as of the date of the filing of the petition for an arrangement: In the Matter of Lieb Bros., Inc., 150 F. Supp. 68, affirmed 251 F. 2d 305 (1957). Claims not then in existence and not provable at the time of the filing of the petition may not be allowed against the debtor's estate: In re Ten Eyck Co., Inc., 40 F. Supp. 270, affirmed 126 F. 2d 806 (1942), and this rule applies in the case of an arrangement proceeding as well as in the case of an ordinary bankruptcy: Valdes v. Feliciano, 267 F. 2d 91. See also Ingels v. Boteler, 100 F. 2d 915, affirmed 308 U. S. 57 (1939) ; Zavelo v. Reeves, 227 U. S. 625 (1913) ; Allen v. See, 196 F. 2d 608; In re Setzler, 73 F. Supp. 314.

It is the purpose of the bankruptcy law to fix the date of cleavage with reference to the condition of the bankrupt's estate so that there can be a distinct line of demarcation on which the debtor can base new and

fresh economic endeavors: In re Merchandise Mart of Columbia, 79 F. Supp. 686. In view of the foregoing authorities, it appears that the date of cleavage in this bankruptcy action was the date of the filing of the original petition in bankruptcy, January 5, 1961. Even if it were a section 322 arrangement, commenced by the filing of the arrangement petition, the date of cleavage would have been January 30, 1961. Both of these dates precede the date of the accident, February 7, 1961, which was the day Cramer's cause of action arose. Thus, on the date of cleavage, he did not have even an unliquidated claim against the bankrupt estate, and his claim would not have been susceptible of proof or allowance even if this had been an arrangement by way of extension subject to the broad language of section 307, supra. The pleaded facts most probably indicate that this was a section 321 arrangement by way of composition, making the date of cleavage January 5, 1961, and requiring that Cramer's claim for personal injuries must have been included in an action already instituted and pending on that date. However, even if we give McIntosh the benefit of every doubt, and assume that it was a section 322 arrangement by way of extension, Cramer's unliquidated claim would at least have to have been in existence on January 30, 1961, and this was not the case. Accordingly, the present trespass action is not barred by the fact that East Shore's predecessor completed an arrangement proceeding under the Bankruptcy Act at the time Cramer's unliquidated personal injury claim was in existence, because such claim arose after the "date of cleavage" in the bankruptcy proceeding. McIntosh did not and could not have obtained a discharge in bankruptcy as to Cramer's claim, and such allegation would not constitute a legal defense to this action. Plaintiff's demurrer to this defense found in defendant's new matter must be sustained.

2. Was Cramer an employe of defendant corporation and is his claim thus barred by the Pennsylvania Workmen's Compensation Act?

The second defense averred by East Shore's new matter is that Cramer, as the receiver in bankruptcy of defendant's predecessor, was performing valuable services for the corporation, and was thus an employe, limiting his recovery for personal injuries to that provided by the Pennsylvania Workmen's Compensation Act: Act of June 2, 1915, P. L. 736, as amended, 77 PS §1, et seq. If Cramer was an employe of McIntosh, and he sustained his alleged injuries in the course of such employment, then any recovery for these injuries would have to be sought under the provisions of the act: Quick v. Allegheny Construction Equipment Co., 361 Pa. 377 (1949); Walters v. Kaufmann Department Stores, Inc., 145 Pa. Superior Ct. 56 (1941); Capetola v. Barclay White Co., 139 F. 2d 556, cert. den., 321 U. S. 799. However, no provision of the act, nor any case authority, has come to our attention which would sustain this proposition.

A corporate receiver appointed by the bankruptcy court does not appear to fall within the definition of an employe found in section 104 of the Act of June 21, 1939, P. L. 520, 77 PS §22, as follows:

"The term 'employe,' as used in this act is declared to be *synonymous with servant,* and includes—

. . ."All natural persons, who perform services for another for a valuable consideration, *exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer,* . . ." (Italics supplied.)

For the purposes of this demurrer, the facts are not in dispute, and the issue as to whether Cramer, as a receiver in bankruptcy, was an employe of the corporate defendant is one of law for the court: Thomas v. Bache, 351 Pa. 220, 229 (1945). Our appellate courts

have frequently been called upon to decide whether a person is an employe within the definition of the Workmen's Compensation Act, and these decisions are helpful to the instant determination. For example, in Thomas v. Bache, supra, it is stated that:

" 'The vital test in determining whether a workman' is a servant of the person who engages him for the work 'is whether' he is 'subject to' the latter's 'control or right of control not only with regard to the work to be done but also with regard to [the] manner of performing it.' "

By the act's definition, " 'employee' " is synonymous with "servant," and, " 'the relation of master and servant exists where the employer has the right to select the employe, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and the manner in which it shall be done' ": McColligan v. Pennsylvania Railroad Company, 214 Pa. 229 (1906) ; Felten v. Mellott, 165 Pa. Superior Ct. 229 (1949).

It is immediately apparent that Cramer, as the receiver in bankruptcy, could not have been a "servant" of McIntosh. Cramer was selected and appointed by the bankruptcy court rather than by McIntosh; likewise, his removal could have been effected only by or with the approval of the bankruptcy court, rather than McIntosh; finally, Cramer's responsibility as receiver ran primarily to the appointing authority, i.e., the bankruptcy court, and through it, to the creditors for whose benefit he was managing and arranging the affairs of the bankrupt corporation. In short, the corporate defendant had no voice whatsoever in Cramer's appointment and selection as a receiver, nor the manner in which he performed his duties, nor in his removal and/or discharge.

A "receiver" is merely a "temporary custodian who protects and preserves assets and property": Cowan

Bankruptcy Law and Practice §856 (1963 ed.). The Bankruptcy Act suggests that receiver is in the status of a "trustee": Section 1(31). The Bankruptcy Act further suggests that a receiver is an officer of the court, appointed thereby (section 2a(3) ), regulated thereby (sections 2(5) (21), 11e, 45, 47, 49), removed thereby (section 2(17) ), and his compensation is subject to the approval of the bankruptcy court: Sections 48, 62c, 62d, 72. The receiver's position is not altered by the fact that a petition for arrangement was subsequently allowed: Sections 48(f), 337(1). A receiver is an "officer of court" and not an "agent" or "employee" of the bankrupt debtor: Bowersock Mills & Power Co. v. Joyce, 101 F. 2d 1000; In re Park Brewing Co., 48 F. Supp. 750; Southern Surety Co. v. Inabnit, 119 Texas 67, 24 S. W. 2d 375 (1930).

Further substantiation for our conclusion is found in the compensation act's exclusion as covered employes of . . . "persons whose employment is casual in character and not in the regular course of the business of the employer . . .": Section 104, supra. There is no question that Cramer's employment as a receiver for the bankrupt McIntosh was "casual" in that he was appointed to perform one particular job of short duration, and that it was of a nonrecurring nature. Likewise, his services as a receiver were not in the "regular course of the employer's business". These latter words have reference to the normal operations which regularly constitute the business in question, and it could not be seriously contended that the duties performed by a bankruptcy receiver in connection with the corporate affairs were in the scope of its "normal" operations. The fact that the work improved the corporate defendant's premises or contributed to its profitable operation does not bring it within the regular course of its business. See Yahnert v. Logan Coal Company, 129 Pa. Superior Ct. 528 (1937);

Cochrane v. William Penn Hotel, 140 Pa. Superior Ct. 323 (1940).

Defendant does not suggest that Cramer was compensated for his services other than to the extent of the compensation allowed him as the receiver by the bankruptcy court. It is neither pleaded nor contended that he was paid regular wages or salary as an employe, nor that he was at any time carried on the payroll of the corporate defendant. Thus, if Cramer, as the receiver, is to be fitted at all into the regular pattern of defendant's corporate affairs, which he cannot be completely because of the restrictions placed upon him by the various provisions of the bankruptcy law, supra, it would appear that his duties more closely approximated those of a corporate officer or executive, rather than those of an employe. In such capacity, he would not come within the provisions of the Workmen's Compensation Act: Carville v. Bornot & Co., 288 Pa. 104 (1927); Nirenstein v. Colang, Inc., 111 Pa. Superior Ct. 72 (1933); Babis v. Mount Jacob Cemetery Company, 179 Pa. Superior Ct. 616 (1955).

We conclude that Cramer, in his capacity as McIntosh's receiver during the bankruptcy and arrangement proceedings, could not, by virtue of such position, have been regarded as an employee of McIntosh as the term is defined by the Pennsylvania Workmen's Compensation Act, and he thus has neither a right nor a duty to proceed against McIntosh or its successor for workmen's compensation benefits. Accordingly, Cramer's demurrer to this second defense pleaded in East Shore's new matter is sustained.

3. As the receiver, was Cramer in the status of an employer and responsible for the conduct of the employee who allegedly caused his injuries?

In the alternative to its pleading that Cramer, in his capacity as the receiver in bankruptcy, was an employe of the corporate defendant, the latter pleads

that Cramer, by virtue of such status, was actually an "employer," and that, under the doctrine of respondeat superior, he was, at the time of the accident, personally responsible for the conduct of the employe who allegedly injured him, and Cramer thus has no cause of action.

This proposition ignores the receiver's status as a trustee for the management of the corporate affairs, and it ignores his legal status as a temporary alter ego of the corporation. While a receiver may be an employer within the definition of the Workmen's Compensation Act (see Giffen v. First National Bank and Trust Company of Greensburg, 123 Pa. Superior Ct. 476 (1936)), he is not an employer as an individual but he is an employer only in his official capacity. Thus, as the receiver, he is amenable to the same rules of liability that apply to the corporation of which he is receiver. This principle was established in McNulta v. Lochridge, 141 U. S. 327 (1891), where the court stated:

. "Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and liabilities are official and not personal, . . .": (page 332)

See also U. S. v. Stephens, 208 F. 2d 105; U. S. v. Pollard, 115 F. 2d 134. The receiver has vicarious liability for the torts of his employes in his official capacity as an officer of the court, but no personal liability is imposed: Ziegler v. Pitney, 139 F. 2d 595.

When an arrangement proceeding is consummated upon confirmation of the arrangement by the bankruptcy court, a final dcree is entered discharging a receiver and closing the estate; 11 U. S. C. A. §772. Those debts which were not provable in the arrangement proceeding, and were thus not discharged nor paid, continue to be the liability of the debtor: 11

U. S. C. A. §35. Just as the remaining assets pass from the control of the receiver back to the corporation upon the court's confirmation of the arrangement and the discharge of the receiver, likewise, the corporate liabilities incurred during the receivership which were not discharged by the arrangement proceeding pass from the receiver's hands to the corporation at the same time. The receiver is not entitled to personally benefit from any profit earned by the corporation during his tenure, and similarly, he is not personally responsible for any undischarged liabilities accruing during that period.

It must also be remembered that the receiver would have had the right to advance his individual claims against the bankrupt estate, if they had been otherwise provable, during the pendency of his receivership. While he was serving as a receiver, Cramer was in fact, and in law, actually two separate and independent legal entities. He was both an individual, and a receiver, and one such entity could have sued the other, if necessary. As was stated in Staples v. Dix & Staples Co., Inc., 85 N. H. 115, 155 Atl. 43 (1931):

"Such summary power as the court may have over the receiver as an officer of the court does not extend to his personal rights in the res. As respects his individual claims upon the property in the custody of the court, the receiver has the same right to be heard as any other litigant": (page 117)

Likewise:

"Suit against a receiver is in form against an individual, but in substance it is against the corporate property in his charge. It is, in all essential particulars, in substance against the corporation itself": Sheat v. Lusk, 98 Kan. 614, 159 Pac. 407, 408

We, therefore, conclude that no vicarious liability attached to Paul Cramer personally because of his status as the receiver in control of the affairs of the

corporate defendant on the date of this accident. While it is not inconceivable that personal liability could attach to a receiver under certain circumstances, no such facts are here pleaded, and Cramer's demurrer to this alternative defense must likewise be sustained.

4. Is plaintiff entitled to a more specific pleading?

As an additional preliminary objection, Cramer seeks a more specific pleading of the allegations of paragraph 12 of East Shore's new matter, which paragraph reads as follows:

"12. On February 7, 1961, the Plaintiff, Paul Cramer, was performing a valuable service for McIntosh Road Materials Co., Inc., now East Shore Materials, Inc."

Cramer claims that the alleged "valuable service" attributed to him should be pleaded with more particularity. This paragraph was part of the allegation setting up the defense that Cramer's claim was barred because he was an employe of defendant corporation. We are herein sustaining a demurrer to that defense, as noted in our discussion, supra. In view of our conclusion that this is not a legal defense, Cramer's demand for a more specific pleading of this defense is mooted and we need not pass upon this preliminary objection.

### Conclusion

Our affirmance of Cramer's demurrer to East Shore's three defenses asserted in its new matter amounts to a striking or negation of paragraphs ten through fifteen of such new matter. Because the factual situation surrounding the happening of this accident and the relationships of the various parties may conceivably permit the assertion of either the second or third defenses if properly pleaded, East Shore should be granted leave to amend its new matter in a manner not inconsistent with this opinion, if the facts so warrant. Should the facts not suggest a re-

drafting of the new matter, then defendant should file an amended answer eliminating these defenses, so that the plaintiff may file a responsive pleading and the action may thereafter be at issue. Accordingly, we enter the following

### Order

And now, July 29, 1963, plaintiff Cramer's preliminary objection in the nature of a demurrer to the defenses set forth in the new matter of defendant's answer is hereby sustained, and defendant East Shore is directed to file an amended answer consistent with this opinion within 20 days.