# Jensen *v.* Atlantic Refining Company, Appellant.

*Workmen's Compensation Law—Death—Wage scale of deceased
—Compensation—Rule of board—Act of June 2, 1915, P. L. 736,
Sec. 309.*

1. Under Section 309 of the Workmen's Compensation Law of
June 2, 1915, P. L. 736, providing that, in cases of continuous em-
ployments, if immediately prior to an accident the rate of wages
was fixed by the day or hour or by the output of the employee, his
weekly wages shall be taken to be five and one-half times his aver-
age earnings at such rate for the working day of ordinary length,
excluding earnings from overtime, and using as a basis of calcu-
lation his earnings during so much of the preceding six months
as he worked for the same employer, it is not unlawful for the
Workmen's Compensation Board to provide by rule that working
days shall be considered to mean the total number of days in the
period of employment covered, according to the calendar, less Sun-
days, legal holidays, half-holiday for each week, and days employee
was prevented from working through no fault of his own, as a guide
to facilitate the determination of the weekly wage upon which the
allowance of proportionate compensation is based.

2. It was not the legislative purpose to give any fixed definite
meaning to the phrase "working day"; it was, on the contrary, the
legislative intent to leave open for the compensation board to de-
termine what, between the parties in interest, under the circum-
stances of the various kinds of cases likely to arise, should properly
be accounted a "working day."

3. Where a workman was injured, after being employed thirty-
eight calendar days, during which time there were six Sundays,
two holidays and six half-holidays, and it further appeared that
deceased was prevented from working eight days by illness, the
Workmen's Compensation Board, deducted such eight days from the
number of days on which said workman could otherwise have
worked, for the purpose of determining his average daily wage.

4. In such case the question for determination is not whether
the board properly made a rule for its own guidance in such cases,
but whether the rule could legally be applied under the given state
of facts.

Argued March 26, 1918; reargued July 17, 1918. Ap-
peal, No. 57, Jan. T., 1918, by defendant, from judgment

of C. P. No. 5, Philadelphia Co., Sept. T., 1917, No. 4025, affirming order of Workmen's Compensation Board, allowing claim, in case of Sorine P. Jensen v. The Atlantic Refining Company.  Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ., on reargument.  Affirmed.

Appeal from Workmen's Compensation Board.  Before MONAGHAN, J.

The opinion of the Supreme Court states the facts.
The court dismissed the appeal.  Plaintiff appealed.

*Error assigned* was the order of the court.

*Ira Jewell Williams,* with him *Yale L. Schekter,* for appellant.

*Louis Levinson,* for appellee, cited: Greenwood v. Nall & Co., 3 K. B. 97 (1915); Turner v. Port of London Authority, 29 T. L. Rep. 204; Rakie v. Jefferson & Clearfield Coal & Iron Co., 3 Dept. Rep. 2486; Pittsburgh Coal Co. v. John Adams, 3 Dept. Rep. 1684; City of Milwaukee v. Miller et al., 144 N. W. Repr. 188.

OPINION BY MR. JUSTICE MOSCHZISKER, October 7, 1918:

In accordance with Sec. 410, Act of June 2, 1915, P. L. 736, 751, plaintiff, widow of Charles Jensen, entered into a compensation agreement with the Atlantic Refining Company, in whose service her husband had been accidentally killed, whereby the weekly payments due her, as a dependent, were ascertained in a stipulated manner. Subsequently, plaintiff sought to have the agreement in question revised, alleging that "the computation [of compensation] was based upon an incorrect standard of wages of deceased."  The board revised the agreement accordingly; and, on appeal, the court below affirmed.  Defendant has appealed to this court.

The right of the board to make the revision is not challenged; but the legality of the rule, or method, of computation, which was applied in so doing, is vigorously attacked.

Section 309 (P. L. 745) of the Act of June 2, 1915, P. L. 736, supra, provides, inter alia, "In [cases of] continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour, or by the output of the employee, his weekly wages shall be taken to be five and one-half times his average earnings at such rate for a working-day of ordinary length, excluding earnings from overtime, and using as a basis of calculation his earnings during so much of the preceding six months as he worked for the same employer." This provision applies to the present case.

Deceased began work for defendant December 15, 1916, and continued in the latter's employ until the date of the accident, January 22, 1917, a period of thirty-eight calendar days, in which there were six Sundays, two holidays, and six half-holidays, aggregating eleven days. In accordance with the relevant provisions of the agreement in this case, the last-mentioned eleven days were deducted from 38, leaving 27, which was used as the divisor in determining the average daily earnings, for the purpose of calculating the weekly wage, in order to ascertain the compensation payable to claimant.

At the hearing for revision, it appeared, and the board found as a fact, that deceased was sick eight days out of the thirty-eight of his employment with defendant, "and was thus prevented from working those days through no fault of his own"; the board ruled that these eight days also should be deducted, to find the proper divisor for use in determining Jensen's average daily earnings—in other words, that the proper divisor for this purpose was 19, and not 27. The correctness of this decision is challenged on the present appeal.

The total earnings of deceased for the period of his employment were $64.45, which, divided by 27, gives a daily

average of $2.39, and, when this is multiplied by 5½, a weekly wage of $13.14; 45% whereof, the compensation allowed by the act, is $5.92. If, however, 19 is used for the divisor, instead of 27, the daily average becomes $3.39, the weekly wage $18.65, and the compensation $8.39.

The rule applied in this case reads as follows: "1. Take total earnings for six months preceding the accident, or so much thereof as employee has worked for the same employer. 2. Subtract from said 'Total Earnings' all earnings for overtime, if any. 3. Divide remainder thus obtained by number of 'Working-days.' 4. For 'Average Weekly Wage' multiply above result by five and one-half. Note: 'Working-days' shall be construed to mean total number of days in the period of employment covered, according to the calendar, less: (a) Sundays; (b) Legal holidays; (c) Half holiday for each week; (d) Days employee was prevented from working through no fault of his own." This is one of several general rules adopted by the compensation board as a guide in classes of cases likely to arise, to facilitate the determination of the weekly wage upon which (under Sec. 306, Act of 1915, supra, P. L. 742) the allowance of proportionate compensation is based.

Appellant contends that the phrase, "working-day," used in the Act of 1915, supra, must be limited to mean "any day on which work is ordinarily performed, as distinguished from Sundays and holidays"; and, while appellant "freely concedes the power of the Workmen's Compensation Board to formulate rules and regulations governing the administration of the act," it contends the above-quoted rule, in its broader construction of the phrase in question, goes beyond "the legal contemplation of the act," and, therefore, is an unlawful extension thereof or departure therefrom, "under the guise" of an "administrative rule." These contentions cannot be sustained.

The employee might not work every day during the period under investigation, and he might not receive the same daily wage each day he works; recognizing this, the Act of 1915, supra, makes it the duty of the referee or compensation board, in each case, to find the average daily earning, and, by use of the latter in the manner provided by the statute, arithmetically to determine the average weekly wage received by the injured or deceased person, such finding and computation being for the purpose of assistance in fixing the compensation which the claimant is to receive.

That there are several methods by which the average daily earning may be determined, is apparent. First, the actual earnings received during the period must be added together, then, after making such deductions therefrom as are required by the act, the remainder must be divided by the number of "working-days" in the period, in order to find the average wage for a working-day of ordinary length; the statute, in effect, so provides. In determining the required divisor, however, the inquiry arises: What is meant by the phrase, "working-day," as used in the act? Must the divisor be confined to the number of days the person in question actually worked, or shall it include all days that an opportunity was open so to do, or, again, ought it to be arrived at by subtracting from such last-mentioned days those on which he failed to work through no fault of his own; or, finally, must some other method be pursued, and, if so, what?

After considering all the suggested questions, and others, we are convinced it was not the legislative purpose to give any fixed, definite meaning to the phrase, "working-day"; but believe it was the intention to leave open, for the compensation board to determine, what, between the parties in interest, under the circumstances of the various kinds of cases likely to arise, should properly be accounted a "working-day." Of course, with that fact determined, there will be no difficulty as to the divisor required in any given case.

Evidently, the compensation board viewed the act as we have just construed it, and, seeing that, because the meaning of the term "working-day" is not defined in the statute, disputes might arise as to how an average daily earning should be computed, that body early adopted rules of computation to fit the various classes of cases which were likely to come before it for determination, including the rule applied at bar, the legality of which is attacked by appellant.

It was the purpose of the legislature to vest those who administer the Workmen's Compensation Law with broad discretion in the ascertainment of facts: Mc-Cauley v. Imperial Woolen Company, 261 Pa. 312. As already suggested, in each case it is necessary to determine the fact of the average daily earning of the injured or deceased person, and, to the extent indicated in this opinion, the Act of 1915, supra, leaves the method for so doing to the discretion of the board, or its referee; in the exercise of its best judgment, the former adopted and applied the rule here in question, which, on the facts at bar, seems within its rights under the law.

It is not at all apparent the rule is open to the objection urged by appellant, that, in many instances, it will lead to inevitable confusion when an attempt is made to determine the days an employee "was prevented from working through no fault of his own"; regarding this contention, it is sufficient to say that such inquiry presents no unusual difficulties, but involves simply the determination of issues of fact, after proper examination and investigation of the proofs adduced, as in other cases.

No more is it apparent, in a case like the one before us, that the rule works any injustice; whereas the rule contended for by appellant, if generally applied, probably would have that effect. For instance, concentrating our thought on the subject of "average daily earnings," suppose A gives B "continuous employment," on piece-work, both anticipating the job will last indefinitely. During

the first week, with Sunday off, B makes $12, or $2 a day. On Monday of the second week, B earns $3; the following three days, through no fault of his own, he is too ill to work, but returns on the fifth day and makes $2; on the last day he is killed in the course of his employment, having previously earned $1. Thus, B's total earnings are $18. According to the rule contended for by appellant, to arrive at B's average daily earning, we would divide this $18 by 12 (days), which would give a daily wage of $1.50; but, under the rule applied by the board, we must divide by 12 less 3, or 9 (days), which gives an average daily wage of $2. It is plain that $2 more nearly represents B's real average daily earnings than $1.50; and, of the two sums, the former certainly more nearly approximates B's earning power. It likewise is plain that, figuring on six days, $12 comes nearer what would be B's average weekly earnings than $9.

Exceptional instances have been suggested by counsel where the rule here successfully applied might not work out exact justice in determining a weekly wage, for example, where an employee, through illness or other proper cause, remains away from his job a certain number of days out of each and every week, and continues this course for such a considerable period that it becomes apparent the remaining days of the week really represent his physical capacity for work, and, accordingly, affect his average earnings; but the present case does not fall within this example. Such a case will, no doubt, receive due consideration when, and if, it comes before the compensation board.

The rule under consideration is couched in general language, but, like all regulations of procedure not firmly fixed by statutory enactment, the tribunal which announced it may depart therefrom should a case arise which falls within the broad language employed, yet where its unqualified application would work plain injustice. The controlling question presented on this appeal, however, is not the one principally argued by coun-

sel, i. e., as to the general propriety, or applicability, of the rule we have been discussing, but whether or not such rule was legally applicable to the circumstances of the present case. We conclude that, on the facts at bar, the application of the rule in question shows no breach of either the letter or purpose of the act, neither does it work manifest injustice nor offend against any relevant general principle of law; therefore the learned court below did not err in approving the award of compensation.

The judgment is affirmed.