Romig *v.* Champion B. & F. Co., Appellant.

Argued March 15, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Thomas Raeburn White* of *White, Schnader, Maris & Clapp,* and with him *Wayland H. Elsbree* and *F. Lyman Windolph,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY BALDRIGE, J., April 25, 1932:

Simon P. Romig, the claimant, had his right foot injured on January 15, 1932, in the course of his employment, suffering therefrom temporary total disability. On February 1, 1932, a compensation agreement was entered into, whereby he was paid the minimum weekly sum of $7 to February 28, 1932. The parties then petitioned the board to determine the weekly wage of the claimant, stipulating therein that his wages were $3.50 per day, and that the defendant's foundry, during the year 1930, and up to April 15, 1931, operated only three days per week; that from April 15, 1931, to January 15, 1932, it operated but two days per week; and that the claimant worked every day that the foundry operated during the year preceding the accident. On June 21, 1932, the board filed its opinion, determining the average weekly wage of the claimant to be the sum of $19.25, derived by multiplying his daily wage of $3.50 by 5½ days; and ordered the defendant to pay the claimant $12.51 per week as compensation during his period of disability, less whatever payments had already been made to him under the agreement. An appeal was taken, and the court below affirmed the board, which is the subject of this appeal.

The sole question involved is the meaning of "continuous employments" in section 309 of the Workmen's Compensation Act of June 2, 1915, P. L. 736 Art. III, as amended June 26, 1919, P. L. 642, §3 (77 PS §582), which provides: "In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour, or by the output of the employe, his weekly wages shall be taken to be five and one-half times his average earnings at such rate for a working day, and using as a basis of calculation his earnings during so much of the preceding six months as he worked for the same employer: Provided, however, That if the employe regularly and habitually worked more than five and one-half days per week, the weekly wage shall be found by multiplying his average earnings for working day by six, six and one-half, or seven, according to the customary number of working days constituting an ordinary week in his occupation or trade." It must be kept in mind that the broad purpose and object of this legislation is to compensate an employee, and that such compensation shall be based on wages received. The words "continuous employments," being undefined in the act, must be taken in their popular sense, if "not contradictory to the object and intention of the lawmakers": Carville v. Bornot & Co., 288 Pa. 104, 112, 135 A. 652. Among the definitions of "continuous," given in Webster's New International dictionary and the New Standard dictionary, are: "without break, cessation, or interruption;" "uninterrupted;" "unbroken;" "constant;" "procured without interruption of sequence;" "unintermitted."

It will be noted in the proviso that if the employee "regularly and habitually worked more than five and one-half days per week," he is entitled to additional compensation, which seems to imply that, as a basis of calculation, a week means five and one-half days

of work regularly and habitually performed, subject, of course, to strike, illness, or temporary interruption. It can hardly be said that if a man works one day, or, as in this case, two days a week, he is engaged in continuous employment in the sense that the employment is constant or uninterrupted. If working two days is to be regarded as continuous employment, and compensation is based on more days than are actually worked during the six months, the employee receives more as compensation than he would have received as wages if he had worked two days per week. That would be unjust, and bring about a result, which, we think, was not within the intention of the Legislature. That view is strengthened when we turn to section 309 of the Act, which provides: "...... the employe's weekly wages shall be taken to be one-fiftieth of the total wages which he has earned from all occupations during the year immediately preceding the accident, unless it be shown that during such year, by reason of exceptional causes, such method of computation does not ascertain fairly the earnings of the employe; in which case the period for calculation shall be extended so far to give a basis for the fair ascertainment of his average weekly earnings." Certainly, the method resorted to by the board does not "ascertain fairly the earnings of the employe."

In the case of Jensen v. Atlantic Ref. Co., 262 Pa. 374, 105 A. 545, cited by the appellee, the employee was actually employed continuously. The court evidently recognized that cases may arise in which a strict application of the rule adopted by the board would not be enforceable. In the course of the opinion, the court said (p. 380): "Exceptional instances have been suggested by counsel where the rule here successfully applied might not work out exact justice in determining a weekly wage, for example, where an employee, through illness or other proper cause, remains

away from his job a certain number of days out of each and every week, and continues this course for such a considerable period that it becomes apparent the remaining days of the week really represent his physical capacity for work, and, accordingly, affect his average earnings; but the present case does not fall within this example. Such a case will, no doubt, receive due consideration when, and if, it comes before the compensation board......The controlling question presented on this appeal, however, is not the one principally argued by counsel, i. e., as to the general propriety, or applicability, of the rule we have been discussing, but whether or not such rule was legally applicable to the circumstances of the present case. We conclude that, on the facts at bar, the application of the rule in question shows no breach of either the letter or purpose of the act, neither does it work manifest injustice nor offend against any relevant general principle of law; therefore the learned court below did not err in approving the award of compensation.''

The construction of the portion of the statute we are considering has never been determined in this state, in so far as we have found. But the reasoning and construction of the compensation laws in other states, although their language is not the same as in our statute, throw light on the subject. In Cote v. Bachelder-Worcester Co., 160 A. 101 (N.H.) (1932), the New Hampshire act provides that in case of death the amount of compensation payable to dependents should be ''equal to one hundred fifty times the average weekly earnings of such workman when at work on full time during preceding year.'' The normal running time of the defendant corporation was 50 hours per week. During the year preceding the accident the decedent worked for defendant all the time there was work for him to do, so that his actual average earnings were less than they would have been if

defendant's factory had been running full time and he had worked all the time. The court said that "full time," like " 'part time' and 'overtime,' has reference to a customary or normal period of work. All of these terms assume that a certain number of hours customarily constitutes a day's work and that work for a certain number of days constitutes a week's work within a given industry or factory......'One who works only part of a day or only two or three days out of a week, or only a few weeks out of the year, cannot be said to be working at full time.' "

In Danzy v. Crowell & Spencer Lumber Co., 16 La. App. 300, 134 So. 267 (1931), the claimant worked on an average of three days per week. The court in a prior decision had adopted the rule of determining the weekly compensation to which an employee was entitled by multiplying the daily rate of pay by 6, on the basis that six days constitute a working week as a general rule. The court, however, refused to apply such a rule to an injured employee who had worked only three days per week, and stated: "Suppose a person was employed regularly only one day a week, and received an injury. Certainly the law does not contemplate that compensation be paid on the basis of the wage received for one day multiplied by six."

In Mahony Co. v. Marshall, 46 Fed. (2) 539, claimant sought compensation under the Longshoremen's and Harbor Workers' Compensation Act (March 4, 1927, c. 509, §10, 44 Stat. 1431) (33 USC §910). It appears the claimant had worked but 182 days during the year preceding his accident, because of lack of employment, although he was ready and willing to work. The court held that "claimant was paid only when he worked, and his wages when he worked must compensate for the time he did not work, and, if injured, shall be paid on a basis of 66 2/3 per centum of his 'annual average earnings.' It would not have

been the purpose or intent of the Congress, in view of the construction placed on the act by the court of states from which the act in issue was largely taken, and the 'due process' and 'equal protection' clauses of the Constitution and the provisions of section 10, subdivision (a), (b) and (c), 33 USCA §910 (a-c), to apply the '300 rule' to this claimant upon the record in this case, when the average earning capacity is known, no interruptions of earnings being occasioned by illness or injury. These subdivisions are merely rules by which the 'annual earning capacity' may be gauged when actual earnings in normal conditions cannot be computed. The readiness, willingness, and fitness of the claimant for work do not require the employer to *insure work*. These conditions the claimant voluntarily accepted with the wage as satisfactory when well, and, when injured, may not be paid under the provisions of the act more than he earned." This case was affirmed on appeal to the Circuit Court of Appeals, 56 Fed. (2d) 74, wherein the court observed: "Surely it is not reasonable or fair to apply subdivisions (a) or (b) when to do so would result in ascertaining a mere theoretical earning capacity, having no regard to the actual facts of the case, but which would award arbitrarily to an injured laborer disability compensation in excess of what he was able to earn if at work, as shown by earnings, as in this case, covering a period of 3 years next preceding his injury. Compensation acts, to be within constitutional limits, must not be arbitrary, unreasonable, or fundamentally unjust or oppressive."

If we were compelled to construe employment of two days a week within the meaning of "continuous employments," it would discourage employers from adopting "staggered" employment, whereby each employee works a portion of the time to give a greater number work. This system is one of the methods gen-

erally recognized as a great aid to ameliorate the prevailing and unfortunate conditions of unemployment now confronting us, and should be encouraged by all if possible.

Believing, as we do, that the statute contemplated, not the theoretical, but the actual earnings of the employee, if they can be ascertained, as the basis upon which compensation is to be awarded, we are unable to concur with the court's conclusion.

Judgment is reversed, and is now entered for the defendant.