Romig, Appellant, *v.* Champion Blower
& Forge Company.

Argued November 28, 1933.   Before FRAZER, C. J.,
SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN,
JJ.

*Roland S. Morris,* of *Duane, Morris & Heckscher,* with him *Roger J. Dever* and *Morgan S. Kaufman,* for appellant.—The claimant employee regularly worked on every day his employer's foundry was operated, and, therefore, was engaged in "continuous employment" within the meaning of the Workmen's Compensation Act.

The three kinds of employment are the only kinds named in the statute to be considered in determining whether an injured person was at the time of his injury engaged in employment of a kind which by the terms of the Compensation Law entitled him to compensation, and if so, the amount thereof: Rakie v. Jefferson & Clearfield Coal & Iron Co., 262 Pa. 444; Froehly v. Harton, 291 Pa. 157.

The compensation board correctly computed the compensation due claimant under the statute and the rules of the board, and the computation of the Superior Court disregards both statute and rules: Jensen v. Refining Co., 262 Pa. 374; Rakie v. Coal & Iron Co., 262 Pa. 444.

The award made by the board and affirmed by the court of common pleas was not an unjust result.

The mere fact that the foundry in the present case was operated only two days per week in times of depression, does not lead to the conclusion that the ordinary week referred to in the act was to be considered as less than five and one-half days.

For a long period prior to the present non-normal times many industrial workers earned far more than the $24 a week that was arbitrarily fixed by the law (Act of 1927, P. L. 192) as the maximum wage on which death compensation might be based, and during the period just noted many such workers earned a wage which would have justified injury compensation at a much higher figure than the $15 per week which the act fixed as a maximum (see Act of 1927, P. L. 188).

The guiding principle which runs through the cases is that compensation is based on earning capacity, as distinguished from wages actually received.

*Thomas Raeburn White,* with him *Wayland H. Elsbree* and *F. Lyman Windolph,* for appellee.—Appellant was not engaged in "continuous employment" at the time of his injury, within the meaning of the Workmen's Compensation Act.

It was not the intention of the statute to classify all employments except "casual" or those in "seasonal occupations" as "continuous."

"Continuous employments" as used in the statute refers to cases in which the employee really works continuously, not intermittently or "part time."

The law was intended to provide, and does by its terms provide, for compensation to the workman for loss sustained through his inability to work, not that he should gain by the accident.

Where the employee receives wages of less than $7 a week, at the time of the accident he cannot as compensation receive more than the amount of his wages: Jensen v. Refining Co., 262 Pa. 374.

The Pennsylvania statute contemplates wages actually earned and received as the basis for determining earning capacity.

OPINION BY MR. CHIEF JUSTICE FRAZER, April 23, 1934:

Simon P. Romig, who, on January 15, 1932, and for a number of years before, had been employed by the Champion Blower & Forge Company, was, on the date mentioned, injured in the course of his employment and suffered temporary total disability. For more than six months previous to the date of injury, the foundry in which he worked had been operating two days a week, due to the exigencies of the world-wide financial depression. Romig entered into a compensation agreement with his employer under which he agreed to accept $7 a week, or the minimum payment permitted under the provisions of the Workmen's Compensation Act.

Subsequently, all interested parties joined in a petition to the workmen's compensation board to determine the weekly wage of claimant for the purpose of ascertaining the weekly compensation rate to which he was entitled. It was stipulated, among other things, that claimant's wage was paid on a daily basis at the rate of $3.50 per day, and that claimant worked every day the foundry operated during the year preceding the accident. The board, following the provisions of section 309 of the Workmen's Compensation Act, found the average weekly wage of claimant to be the sum of $19.25. This figure was reached by multiplying the daily wage of $3.50 by a working week of five and a half days. The amount of compensation was accordingly placed at $12.51, or sixty-five per cent of the weekly wage, as provided in section 306 of the act. The employer appealed from the award to the Court of Common Pleas of Lancaster County, which affirmed the finding of the workmen's compensation board. A further appeal by the employer was heard by the Superior Court, which reversed the judgment of the common pleas on the ground that claimant was not in defendant's "continuous employment," inasmuch as he worked only two days a week, and for the further reason that it would be unjust to the employer to sustain an award of compensation in an amount greater than the actual wages of the injured employee. This appeal by claimant is from the judgment of the Superior Court.

The question presented for our consideration is the determination of the proper amount of compensation payable to claimant under the facts as already outlined. This involves an examination of the Act of June 2, 1915, P. L. 736, as amended (the Workmen's Compensation Act).

By the terms of the act, the method used in determining the weekly wage of a claimant depends upon the type of employment in which he is engaged. Except for excluding from its operation persons whose employ-

ments are casual in character, the act mentions only two types of employment,—seasonal and continuous. In the case of seasonal occupations, the employee's weekly wages are taken to be one-fiftieth of the total wages which he has earned from all occupations during the year immediately preceding the accident. As to con- tinuous employments, section 309 of the act provides: "In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour, or by the output of the employee, his weekly wages shall be taken to be five and one-half times his average earn- ings at such rate for a working day, and using as a basis of calculation his earnings during so much of the pre- ceding six months as he worked for the same employer: Provided, however, that if the employee regularly and habitually worked more than five and one-half days per week, the weekly wage shall be found by multiplying his average earnings for working day by six, six and one- half, or seven, according to the customary number of working days constituting an ordinary week in his occu- pation or trade."

It is obvious that claimant was not engaged in a sea- sonal occupation. The argument is consequently made on behalf of appellant that his work being neither casual nor seasonal must necessarily be considered continuous, since no other classification of employment exists in the act. We are constrained to the same conclusion, so far as concerns the method of determining claimant's com- pensation, by other considerations, especially the mean- ing of the phrase "continuous employments." The Su- perior Court took the view that employment could not be continuous, in the sense of unbroken or uninterrupted, where the employee worked only two days a week. That court's opinion, however, admitted that an employee who was prevented from working by strikes, illness, or other temporary interruptions would nevertheless be consid- ered in continuous employment. We are unable to un- derstand how the situation is altered where the employee

is prevented from working by a restricted schedule of operation made necessary by economic conditions. The employment is continuous in that the status of employer and employee persists between the parties even though no work is done on a particular day. Claimant worked only two days a week, and was paid by the day, but a new contract of hiring was not created each week. In other words, the employee was not discharged after each day's work and reëmployed when the foundry resumed operation. He was simply paid each week on the basis of the number of days on which the plant was operated. His employment was continuous, although the days on which work was performed were broken in sequence through no fault of his own.

We are of opinion the language of the act indicates the intention of the legislature to make five and one-half days the minimum working week for purposes of fixing compensation. No formula is provided for ascertaining the compensation payable when the employee regularly works less than five and one-half days, although full instructions are given for computing the weekly wage where the claimant works more than five and a half days. Even though an employee, through no fault of his own, works less than five and a half days over such an extended period that the shorter number of hours becomes the normal and regular working week, what standard are we to apply in computing the compensation payable if the five and one-half day standard is not taken? Should the amount of wages actually received be the basis for estimating compensation, or shall we take a percentage of the amount actually earned? In the latter case the figure reached may well be below the $7 minimum prescribed by the act. No doubt it would be equitable to consider each case separately and arrive at a sum for compensation appropriate to the individual circumstances, but no such authority is conferred upon either the workmen's compensation board or the courts.

We must take the law as we find it and apply the rules there set forth.

Nor can we obtain assistance from the cases cited by counsel. The precise point has not heretofore been decided in Pennsylvania, and the cases from other jurisdictions can be distinguished, not only on their facts, but also because the language of the statutes involved is entirely dissimilar.

The principal reason advanced by appellee for sustaining the judgment of the Superior Court appears to be the injustice to the employer of requiring him to pay a larger sum in compensation than was received by the injured workman in wages. We are not convinced this results in actual inequality. In the first place, awards of compensation permitted by the act are not excessive, even when estimated on the basis of a five and a half day week. In times of prosperity, when high wages were paid and plants operated at capacity, the maximum compensation for an injured workingman rose no higher than $15 a week. This sum was hardly a figure which permitted an extravagant scale of living. The owner of a concern owes a duty to those who work for him and that duty extends at least to the point of providing adequate compensation for those employees who suffer injuries.

Although we have not discovered precedents exactly in point for the question now before us, and none have been indicated by counsel, there are cases in which the amount designated as the weekly wage, for purposes of fixing the compensation, was higher than the sum actually received by the employee. In O'Donnell v. South Fayette Twp. School Dist., 105 Pa. Superior Ct. 488, the weekly wage of claimant was estimated at $20 despite the fact she received only $10. And see Jensen v. Atlantic Refining Co., 262 Pa. 374, in which claimant's daily wage, considered from the point of view of elapsed working days, was $2.39, yet compensation was determined upon the basis of a daily wage of $3.39. The rule

applied in the Jensen Case was upheld in Rakie v. Jefferson & Clearfield Coal & Iron Co., 262 Pa. 444, under similar facts. See also Bennett v. Fertig, 162 A. 95, and Beaver Dam Coal Co. v. Hocker, 202 Ky. 398.

In the present case, we find nothing to indicate that the foundry in which claimant was injured and had been continuously employed for years may not soon resume operation on a five and a half day schedule. In such case the normal method of computing the weekly wage would be followed. Must the present claimant be prejudiced because he was injured at a time the plant was operating on a restricted schedule? We are of opinion, after full consideration of the question, that the five and a half day week was intended by the legislature to be the method by which compensation payments are to be fixed, based upon the daily wage. If this method of computation is not applied, injustice and inequalities between employees in the same establishment must result, and there will be no standard of measurement except the number of days worked in the week of the accident. Thus, if in the first week of a month there was but one day's employment, in the second week three days, in the third week five and a half days, and in the fourth week, when the accident happened, but one day, the injured man would receive compensation only on the basis of the one day, whereas had he been injured on the first day of the previous week, the measure of his remuneration would have been on the full five and a half day basis. His fellow workman, employed as he was, injured in the third week, would receive the full compensation provided by the act, whereas he, injured in the fourth week, would receive a much smaller compensation for his injury. We think no such inequalities could have been intended.

The judgment of the Superior Court is reversed and the judgment of the court of common pleas reinstated at the cost of appellee.