McAllister Unemployment Compensation Case.
T. Hogan Corporation, Appellant, *v.* Unemployment Compensation Board of
Review.

Argued September 21, 1959. Before RHODES, P. J.,
HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(GUNTHER, J., absent).

*Arthur Beal,* with him *Robert Cox,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with
him *Anne X. Alpern,* Attorney General, for appellee.

OPINION BY WATKINS, J., December 17, 1959:

These are unemployment compensation cases in
which the question involved is whether the claimants,
who are longshoremen, are entitled to have their bene-
fits computed under the full-time weekly wage provi-
sion as provided by Section 404(a) of the Unemploy-
ment Compensation Law, Act of 1936, December 5,

P. L. 2897, Art. IV, Section 404, as amended by the Act of 1955, P. L. 6, Sec. 6, 43 PS §804(a).

The claimants, Herbert E. McAllister and Joseph Melnick are both longshoremen, employed in that trade, which involves the loading and unloading of ships for the appellant company, T. Hogan Corporation, and other companies engaged in the same business. The facts and issues of law as to both cases are the same, so that the appeals were argued together and this decision will dispose of both cases.

The base calendar year used to determine benefits was 1957. Using the claimant McAllister's record, his total earnings for this base year was $1796, of which, he earned $1184 from the appellant. His highest quarterly earnings were $595; the hourly rate was $2.73 an hour.

The Bureau originally determined on June 16, 1958 to award benefits on the highest quarterly earnings of $595 or $24 per week. The Bureau subsequently revised this determination and by using the full-time weekly wage method awarded benefits of $35 per week. This was done by using the $2.73 hourly rate to determine a daily rate of $21.84 and so a weekly rate in excess of $70.

Section 404(a) reads as follows: "(a) The employe's weekly benefit rate shall be computed as (1) one twenty-fifth of his 'highest quarterly wage' in accordance with Part A of the Table Specified for the Determination of Rate and Amount of Benefits, or (2) fifty per centum (50%) of his full-time weekly wage, whichever is greater; or, if his base year wages are insufficient to qualify him for compensation by either of these methods, his weekly benefit rate shall be determined as (3) that rate appearing in Part B of the table, on the line on which in Part C appears the amount of qualifying wages which most nearly approximates, but does not exceed, his base year wages."

This amendment to the Act was recommended to the 1955 Session of the Legislature by Governor Leader and analysis of the need for this legislation was included in the Governor's message: "During the recent spells of short-time employment, a small but increasingly substantial number of claimants have found themselves measured for unemployment benefits in accordance with their short-time earnings. The Bill proposes that the weekly benefits rate for such claimants be measured instead by their full-time weekly wage or earnings in high quarter, whichever is the greater. In effect, this will place the Unemployment Compensation Law within the purview of the Romig decision, well known in Pennsylvania Workmen's Compensation Law and characteristic of the early years of the Pennsylvania Unemployment Compensation Law." Leg. Journal Vol. I (1955), page 284. *Romig, Aplnt. v. Champion B. & F. Co.,* 315 Pa. 97, 172 A. 293 (1934), held that an employee, who works only two days a week at a daily wage under a restricted schedule of operation of his employer's business made necessary by economic conditions, is continuously employed under the meaning of the Workmen's Compensation Law and is entitled to compensation based upon the full-time weekly wage.

After the adoption of the amendment in question the Bureau of Employment Security in order to carry out its purpose adopted Regulation 116 effective February 2, 1956 entitled "Determination of Weekly Benefit Rate." This provided: "I. Statement of Basic Policy and Principles. . . . Where the claimant has experienced irregular or short-time employment in his base year, however, the high quarter formula has failed to compensate the claimant at the rate of 50 percent of his weekly wage. In order to remedy this condition, Section 404(a) of the Unemployment Compensation Law was amended, effective with benefit years commencing

on and after May 1, 1955, to provide an alternate formula for computing a claimant's compensation rate, viz., 'fifty per centum (50%) of his full-time weekly wage, whichever is the greater'." The regulation further provided under Section II "Definitions, G. If the wages are fixed by the hour, the full-time weekly wage shall be the hourly wage rate multiplied by the regularly scheduled number of hours in a full-time work day, and the result multiplied by not less than five." So that from this regulation the following formula was evolved for determining full-time weekly wage: Hourly wage x 8 (number of hours per day) x 5 (number of days per week)=full-time weekly wage.

The avowed intent of the Legislature was to take care of those employees who followed a particular trade or industry but by events beyond their control, economic or otherwise were forced into short-time employment.

Regulation 116 further provides: "I. B. An employe who is employed in an occupation in which remuneration is based solely on commission, with no fixed or guaranteed minimum, or *an employe hired as a contingent or extra employe,* shall be deemed not to have a full-time weekly wage on the basis of such employment." (Emphasis ours)

The appellant contends that because the claimant's employment record did not disclose a normal 40 hour 5 day week, that he is not entitled to the benefits of the amendment. The company further contends that he is excluded from having his benefits computed on a full-time weekly wage because he is a "contingent" employee.

The claimants are longshoremen, following the trade or occupation of loading and unloading ships, and their employment is controlled by a hiring system known as the "shape up" devised and operating under an agreement between the union and the employers. Under this

system hundreds of men attached to this trade present themselves daily for work. If they do get work, it may be with any one of a number of companies engaged in this business. It should be pointed out that although it is impossible to tell from day to day the number of men that will be needed on a given day, the existence of this pool of labor, experienced in this trade, is essential to the very existence of the business.

As set forth in the appellant's brief, "This selection is made daily at the famous 'shape up'. The 'shape up' is essentially an informal gathering of longshoremen at which those who wish to work present themselves as candidates for employment. Whether they are selected to work on any particular day depends largely upon which other longshoremen are present at the shape-up and on the state of the personal relationship between the individual and the foreman who may select him." It is common knowledge that this system of hiring has been subject to scandalous abuse.

When the longshoreman is hired it is on a 4 hour guarantee, regardless of conditions, so that if he does get a ticket to work and the job only requires one hour, he will be paid for four. Under this system he could work two 4 hour guarantees a day or more, 5 days a week. The record discloses that some men working steadily earned more than $6000 a year. The lack of continuity of employment, so that the claimant may from day to day work for several different employers, and his short-time employment are the direct result of this unique but from the employer's standpoint, practical and satisfactory system hiring.

The record shows that there is an association of the union and the companies to give normal employee benefits to those working, under this system, such as vacation, welfare benefits and pensions. This arrangement is clearly for the purpose of curing the apparent lack

of continuity of employment brought about by the peculiar nature of the business itself.

We agree with the board that the claimant was continuously employed under the provisions of Section 404(a) of the Unemployment Compensation Law, and entitled to have his benefits computed on a full-time weekly rate.

It is difficult to define with exactness what a "contingent" employee is, but it comes close enough to the meaning of "casual" as used in the Workmen's Compensation Act to provide comparison. Webster's New International Dictionary, Second Edition, at page 418, defines casual as "coming without regularity; occasional; incidental; uncertain." Contingent is listed as a synonym of casual. The word contingent is defined at page 576, "Liable, but not certain, to occur; possible; accidental or incidental; dependent for effect on something that may or may not occur;" and casual is listed as a synonym.

In *Cochrane v. Wm. Penn Hotel et al.*, 339 Pa. 549, 552, 16 A. 2d 43 (1940), the Supreme Court defined the test to be applied: "As to what constitutes an employment casual in character, it is obvious that the term 'casual' is not capable of scientific definition. Involved in it are the ideas of fortuitous happening and irregularity of occurrence; it denotes what is occasional, incidental, temporary, haphazard, unplanned. Applying it as practically as possible to the subject of employment, it may be said in general that if a person is employed only occasionally, at comparatively long and irregular intervals, for limited and temporary purposes, the hiring in each instance being a matter of special engagement, such employment is casual in character. On the other hand, even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of

frequency and regularity, and, it being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise. Even if there be but a single or special job involved, this does not conclusively stamp the employment as casual. If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual, . . . ."

Most certainly in our case the claimant's employment was with a fair degree of regularity and because of his attachment to the "shape up" was regarded as a permanent employee whose obligation it was to perform the duties of his trade on a day to day basis whenever the need arose. *Plankinton v. Schurr,* 185 Pa. Superior Ct. 41, 137 A. 2d 803 (1958).

Decision affirmed.