White Haven Borough and Pa. National Mutual Casualty Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Cunningham), Respondents.

Submitted on briefs July 2, 1985, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*John E. O'Connor*, for petitioners.

No appearance for respondents.

OPINION BY SENIOR JUDGE BARBIERI, October 1, 1985:

White Haven Borough and its insurer, Pennsylvania National Mutual Casualty Insurance Company, hereafter referred to as Defendants, appeal here an order of the Workmen's Compensation Appeal Board (Board) which dismissed Defendants' petition for modification of the Notice of Compensation Payable under which compensation has been paid to George W. Cunningham, Claimant, for injuries sustained by him on April 24, 1977 while serving as an ambulance attendant in the volunteer fire department of White Haven Borough. We are asked to review and modify the Notice of Compensation Payable to change the

stipulated compensation wage, fixed therein at the Statewide Average Weekly Wage of $199.00, and providing the weekly benefit rate of $132.67, being two-thirds of the Statewide Average Weekly Wage as provided in Section 306(a) of The Pennsylvania Workmen's Compensation Act (Act),[1] 77 P.S. §511. Defendants' contention is that the present rate was improperly mandated under the provision in Section 601 of the Act, 77 P.S. §1031, creating an "irrebuttable presumption," requiring that a volunteer fireman's wages be fixed "at least equal to the Statewide average weekly wage for the purpose of computing his compensation under Sections 306 and 307," since this provision of Section 601 is constitutionally defective;[2] that, therefore, without this mandated wage, Claimant, whose actual earnings were $50 per week in self-employment, is entitled only to the minimum wage provided in Section 306(a) of thirty-three and one-third percent of the "maximum weekly compensation payable,"[3] or $66.33 per week.[4] We note in passing that Defendant's contention thus seeks from us application of a wage base statutorily mandated, as in this case under Section 601, to provide a higher benefit wage than would result if based solely upon the actual earnings of the Claimant; the difference, of course, is the amount payable.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1031.

[2] The version of Section 601 in effect and applicable to Claimant's injury in 1977, quoted hereafter in this opinion, has since been amended with no significant change. *See* §601(b) of the Act, 77 P.S. §1031(b).

[3] Section 105.2 of the Act, 77 P.S. §25.2, provides that "the maximum weekly compensation payable," . . . "as used in this Act shall mean the Statewide average weekly wage as defined in section 105," 77 P.S. §25.1.

[4] We note that our computation results in the benefits rate of $66.33 per week (one-third of $199), rather than the $62.33 as stated by Claimant.

The case comes before us at a time when Claimant is receiving payment for a continuing partial disability, having received compensation under the Notice of Compensation Payable at the rate of $132.67 based upon average weekly wage of $199.00, the Statewide Average Weekly Wage, as previously noted. The petition to terminate benefits was filed on October 6, 1978 and supplemental agreements have been entered into between the parties on September 3, 1977, October 31, 1980, January 20, 1981 and June 15, 1981. Despite these agreed payments a petition to modify was filed, now presently before us, in which it is contended that Section 601 is unconstitutional and that the amount of compensation payable should be modified to that which is payable as the minimum of one-third of the maximum weekly compensation payable as provided in Section 306(a). The referee, declining to address the constitutional issue on the ground that he was "without jurisdiction to decide," allowed the existing agreed benefit rate to stand. An appeal to the Board followed which resulted in an order affirming the referee's decision, except for a modification not now relevant here, but passing upon the constitutional issue as to Section 601 of the Act, the relevant portion of which provides:

> In all cases where an injury compensable under the provisions of this Act is received by a member of a . . . volunteer fire company, or volunteer fire department . . . whether employed, self-employed, or unemployed, there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage for the purposes of computing his compensation under Sections 306 and 307 of this act.

In affirming the referee's refusal of modification, the Board stated:

> While §601 uses the term irrebuttable presumption, our review of that Section leads us to the conclusion that it is a policy statement no different than the provisions for minimum or maximum compensation in the Act. We do not consider it the type of presumption that is a denial of due process. Accordingly, we affirm that part of the Referee's Decision.

We agree with the Board's conclusion, since we view the Legislature's "irrebuttable presumption" language to amount to no more than a computation device for providing what would be fair compensation for a public servant disabled by an injury suffered while serving as a volunteer in a hazardous occupation devoted to the safety and welfare of the community served. While it is true that irrebuttable presumptions have generally not been favored in the law, *Rich Hill Coal Co. v. Bashore*, 334 Pa. 449, 7 A.2d 302 (1939), nevertheless it has been an accepted legislative practice, approved by our Courts, to provide wage computation formulae which provide fair bases for wage computations.[5] Justifications for this are obvious. It is in the nature of workmen's compensation that long periods of incapacity, including perhaps a lifetime of disability, must be compensated on a wage basis fixed as of the date of the injury. Thus, our Supreme Court held long ago in the case of *Romig v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934), that regardless of how many days an employee was working at the time of his injury, his compensation wage rate must be based on five and one-half times his actual daily earnings, the multi-

---

[5] *See* Sections 306(a), 306(b), 306(c)(25), 307, 309 of the Act, respectively, 77 P.S. §§511, 512, 513, 561, 582.

plier now fixed by the Legislature at five.[6] In *Romig*, the employee actually worked two days per week. The Supreme Court there stated:

> We are of the opinion, after full consideration of the question, that the five and a half day week was intended by the legislature to be the method by which compensation payments are to be fixed, based upon the daily wage. If this method of computation is not applied, injustice and inequalities between employees in the same estabhishment must result, and there will be no standard of measurement except the number of days worked in the week of the accident. Thus, if in the first week of a month there was but one day's employment, in the second week three days, in the third week five and a half days, and in the fourth week, when the accident happened, but one day, the injured man would receive compensation only on the basis of the one day, whereas had he been injured on the first day of the previous week, the measure of his remuneration would have been on the full five and a half day basis. His fellow workman, employed as he was, injured in the third week, would receive the full compensation provided by the act, whereas he, injured in the fourth week, would receive a much smaller compensation for his injury. We think no such inequalities could have been intended.

315 Pa. at 104, 172 A. at 296.

In *Guttman Oil Co. v. Workmen's Compensation Appeal Board (Miller)*, 57 Pa. Commonwealth Ct. 486,

---

[6] The Legislature enacted into law this formula but specifying five days rather than the five and one-half days, the work week in *Romig*. Section 309(e) of the Act, 77 P.S. §582(e). *See also*, Section 306(b) of the Act, 77 P.S. §512.

426 A.2d 760 (1981), before the Court was the validity of the formula established in *Romig* and now, as noted, contained in Section 309(e) of the Act, 77 P.S. §582(e), requiring multiplication of a statutory daily wage by five, and resulting there in an average weekly wage of $301.50 with compensation of $199.00 per week, whereas claimant actually received only $241.20, Judge MACPHAIL, for this Court, stated:

> It is true, as the employer contends here, that fixing the Claimant's average weekly wage at $301.50 when he actually received only $241.20 may result in the Claimant receiving partial disability benefits greater than the maximum permitted under Section 306(b) of the Act. Even if that is the case, the litigants and this Court are bound by the provisions of Section 309(e) as interpreted by the Supreme Court. As was said in Romig, 'We must take the law as we find it and apply the rules there set forth.' 315 Pa. at 103, 172 A. at 295. The apparent inequities must be remedied by the legislature, not this Court.

57 Pa. Commonwealth Ct. at 490, 426 A.2d at 762.

Further, on the constitutionality of such socially oriented legislative features in the Workmen's Compensation Act, this Court has ruled that the liberal construction of this legislation in order to accomplish its humanitarian purposes, to benefit employees, does not offend against constitutional guarantees of equal protection or a denial of due process. In *U. S. Steel v. Workmen's Compensation Appeal Board (Mehalovich)*, 72 Pa. Commonwealth Ct. 41, 457 A.2d 155 (1983), where the constitutionality of Section 440 was called in question, Judge MACPHAIL stated for this Court:

The Workmen's Compensation Act is remedial legislation and must be liberally construed to accomplish its humanitarian purposes. Borderline interpretations must be resolved in favor of those it was intended to benefit, the employees. Wall v. Conn Welding and Machine Co., 197 Pa. Superior Ct. 360, 179 A.2d 235 (1962). Section 440 benefits the employee by affording Claimants the ability to receive costs, including attorneys' fees in the event an employer pursues an unreasonable appeal. To allow the reverse would inhibit the employee from pursuing an administrative action in his own behalf for fear he would be assessed heavy costs if he lost. Such a result was neither intended nor implied in this remedial statute. As Judge CRAIG wrote in Lily-Penn Food Stores, Inc. v. Milk Marketing Board (No. 183 C.D. 1981, filed January 21, 1983, slip op. at 15), 'access to administrative tribunals cannot be discouraged by a threat of heavy costs if one loses.' We do not deny that employees, as well as employers, are capable of bringing frivolous appeals; however, the statute's purpose is clearly to further the interests of claimants. As such, we must hold that Section 440 as written is rationally related to a legitimate governmental interest.

72 Pa. Commonwealth Ct. at 485-486, 457 A.2d at 157. *See also, Westinghouse Electric Corp. v. Workmen's Compensation Appeal Board (Pollard)*, 84 Pa. Commonwealth Ct. 579, 482 A.2d 673 (1984).

While the precise constitutional question raised here may be of the first instance, we discern no novelty, as noted by us above and by the Board, in a wage computation formula that reflects a justifiable

social purpose. Volunteer firemen have been specifically favored by the Legislature and the Courts of Pennsylvania. Although volunteers are generally not entitled to benefits under the Pennsylvania Act, volunteer firemen have had workmen's compensation rights at least since 1925. These unpaid public servants are the only firefighters in most of the communities of the Commonwealth.[7]

Recovery for the death of a volunteer fireman was at issue in the case of *Bley v. Com., Dept. of Labor & Industry,* 484 Pa. 365, 399 A.2d 119 (1979), *rev'g* 28 Pa. Commonwealth Ct. 342, 368 A.2d 872 (1977), where Mr. Justice LARSEN, speaking for the Supreme Court in support of recovery, stated:

> Additionally, we are aware, just as the legislature was aware when they enacted the aforesaid deletion, that firefighting, whether paid or voluntary, is an extremely hazardous occupation. Firemen risk their lives for us, the citizens. We work, sleep and go about our business and pleasure in a relative degree of comfort because we know that our firemen are willing to take this risk to protect us and our loved ones. In interpreting this Act, it is rather inconceivable that the legislature did not want to give all the firemen an equal degree of comfort; that is, a knowledge that if they should die in the line of duty, their loved ones will be compensated in some manner. We adopt the language of the Superior Court in Butler v. United States Steel Corp., 205 Pa. Super. 508, 211 A.2d 35 (1965)—
> 'The Occupational Disease Act must be liberally

---

[7] It has been estimated that 80% of all firefighters in this Commonwealth and in the United States are unpaid volunteers.

construed to effectuate its remedial and humanitarian purposes.' See, 1 Pa. C.S.A. 1928(c). 484 Pa. at 369-370, 399 A.2d at 121-122.

Since we see in Section 601, as with other provisions for computing a wage which may not always be directly related to the actual earnings of the injured employee, what is clearly in a remedial statute a provision that is rationally related to a legitimate government interest, we find no constitutional defect in Section 601 that calls for a ruling by us to strike down the wage provision in that Section.

Accordingly, we will affirm.

ORDER

Now, October 1, 1985, the order of the Workmen's Compensation Appeal Board, as of No. A-82493, dated May 19, 1983, is hereby affirmed.

Judge BARRY did not participate in the decision in this case.