591 A.2d 1160

**Donald E. HAGUE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FORNEY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 11, 1991.

Decided May 7, 1991.

Reargument Denied July 15, 1991.

William G. Cohen, New Castle, for petitioner.

John B. Hayes, Pittsburgh, for respondent.

Before PALLADINO and BYER, JJ., BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Donald E. Hague (Claimant) petitions this Court to review an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision to grant a total suspension of benefits on a petition filed by Forney, Inc. (Employer).

Claimant began working for Employer as a machine assembler in September 1986. On August 5, 1987, Employer posted a job opening for a "Helper" [1] which is classified as a laborer "A" position.

Although the hourly wage for the laborer "A" position was approximately $2.00 less than what he was currently making as a machine assembler, Claimant signed the posting, indicating his interest in the position.[2] On September 8, 1987, Claimant was awarded the laborer "A" position. The next day, Claimant began performing his new job duties.

On September 22, 1987, while performing the laborer "A" position, Claimant sustained a deep, left thigh laceration. As a result, Claimant was paid total disability benefits at the rate of $325.69 per week pursuant to a Notice of Compensation Payable. Claimant's rate of compensation was determined by calculating his average weekly wage according to Section 309(d) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d),[3] and then taking sixty-six and

1. According to the posting, the duties and responsibilities of a "Helper" were as follows:
   Clean up in and about plant and perform helper duties as directed. Sweep and clean chips from and around machine tools, clean grind sediment tanks as required, change coolant in drills, grinders, lathes, mills and other machine tools. Help operators, maintenance or anyone else who requires assistance as directed. Maintain grounds as directed and shovel snow from all walkways and employee entrances.

2. Claimant bid for this lower paying position apparently because in his job as a machine assembler, Claimant was experiencing problems with certain supervisors.

3. Section 309(d) of the Act provides in pertinent part:
   Wherever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employe, ascertained in accordance with rules and regulations of the department as follows:
   (d) If at the time of the injury the wages are fixed by the ... hour, ... the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks *in the fifty-two weeks immediately preceding the injury* ...

two-thirds per centum of that figure as required by Section 306(a) of the Act, 77 P.S. § 511.[4]   We note that this basis for compensation, Section 309(d), must be computed from the highest quarter "in the fifty-two weeks immediately preceding the injury."   Footnote 3.   Despite this clear and unambiguous language in the Act, employer maintains, and the Board agreed, that only the brief earning period in Claimant's new job could be considered as the pre-injury Average Weekly Wage for computing his post injury loss. This, of course, resulted in the contested total suspension during the post injury disability period with which we must disagree.

Claimant's continuing disability is not questioned and there are no issues of fact raised on this appeal;  only the obvious question of law.

Since Claimant, on November 17, 1987, returned to his laborer "A" position, Employer filed the instant suspension petition, asserting that all of Claimant's compensation benefits should be suspended as of November 17, 1987 since he had "returned to his same or similar work at the same or greater wages than his pre-injury wage."   Claimant filed an Answer to Employer's petition denying the no-loss averment of employer and argued at trial that although he had returned to his injury date job on November 17, 1987, since his average weekly wage for compensation purposes was higher than his current weekly wage as a laborer "A", he was entitled under Section 306(b) of the Act, 77 P.S. § 512,

> If the employe has been in the employ of employer less than thirteen calendar weeks ... immediately preceding the injury, his average weekly wage shall be computed under the foregoing paragraph, taking 'total wages' for such purpose to be the amount he would have earned had he been so employed by employer the full thirteen calendar weeks ... immediately preceding the injury ... (Emphasis added.)

**4.** Section 306(a) of the Act provides in pertinent part:
> The following schedule of compensation is hereby established: For total disability, sixty-six and two-thirds per centum of the wages of the injured employe as defined in section three hundred and nine ...

to two-thirds of wage differential in compensation for his undisputed disability.[5]

Section 306(b) of the Act, just as unambiguous as Section 309(d), provides in pertinent part:

For disability partial in character ... sixty six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; ...[6]

Disagreeing with the Claimant's view of the law, the referee made the following statement as a finding of fact:

The claimant's loss of earnings since he returned to work is not caused by his compensable injury. This loss of earnings is the result of his voluntary acceptance of a lower paying job before his injury.

Finding of Fact No. 11. Accordingly, the referee concluded that from the date of Claimant's return to work on November 17, 1987 he was not entitled to partial disability benefits.[7]

On appeal to the Board, Claimant argued that (1) the referee erred as a matter of law in failing to award partial

5. In addition, Claimant asserted in his Answer that, because of his injury, he had to stop working from December 4, 1987 through January 3, 1988 and, therefore, was entitled to total disability benefits for that period of time. Compensation for this total disability was awarded and is not at issue here. On January 4, 1988, Claimant returned to his job as a laborer "A" and has continued performing that job to the present time.

6. Although Section 306(b) contains a clause providing a "cap" on Claimant's post injury disability benefits fixed by post injury earnings of "a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury," it was not contested that there was not such a "similar" employee. R.R. 33a. This question was apparently abandoned and will not be considered by us.

7. Specifically, the referee ordered:
(1) Claimant's compensation is suspended from November 17, 1987 through December 3, 1987.
(2) Claimant's compensation is reinstated as compensation for total disability from December 4, 1987 through January 3, 1988.
(3) Claimant's compensation is suspended beginning January 4, 1988, and continuing through the present time.

disability payments to Claimant, since Claimant's earnings on his return to his time-of-injury job was not tantamount to his average weekly wage for compensation purposes; and (2) the referee erred as a matter of law in deciding this case on grounds which were never presented to the referee by Employer.

The Board, in its opinion, analyzed the issues presented by Claimant, in part, in the following manner:

> The burden of proof for Suspension is on the [Employer] to show that, while all disability has not ceased, Claimant has returned to work without a loss of earning power ...

> We agree with Claimant's contention that the Workmen's Compensation Act is remedial in nature and is to be construed accordingly. However, we have difficulty with the 'remedial' aspects of Claimant returning to his pre-injury job at the pre-injury wage under a grant of suspension *and still receiving partial disability benefits over and above that due to the average weekly wage calculation.* In this case, Claimant did switch jobs, even though he did not switch employers. Under Section 413 of the Act, [Employer] is entitled to a Suspension where there is no loss of earnings despite the ongoing disability ...[8]

Board's Opinion, p. 2. Accordingly, the Board affirmed the decision of the referee and dismissed Claimant's appeal.

Claimant now petitions this Court to review the Board's decision.[9] Once more, Claimant asserts the same two arguments which he presented to the Board. Because, in our opinion, the Board incorrectly applied legal principles con-

**8.** As this opinion notes, the emphasized portion of this quote is clearly in error and contrary to the undisputed finding of the referee. The Average Weekly Wage here is substantially higher than the return to work wage; Claimant seeks only two-thirds of the difference.

**9.** Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether there was substantial evidence in the record to support the factual findings. *Adams Steel Erection v. Workmen's Compensation Appeal Board (Klavonick)*, 117 Pa.Commonwealth Ct. 290, 543 A.2d 241 (1988).

trary to appellate court decisions of long standing, we will reverse.

As appears in our quotation above from Section 306(b), where there is continuing partial disability, as is undisputed in this case, a claimant is entitled to be paid for his partial disability two-thirds of the difference between the wages as computed in Section 309, known as the employe's Average Weekly Wage, and the earning power of the employe thereafter. Since the Average Weekly Wage is not disputed, nor is the fact that Claimant's present earnings represent his post injury "earning power," Section 306(b) of the Act, it is obvious that the terms of Sections 306(b) and 309, being completely unambiguous, require a conclusion that all compensation for Claimant's partial disability was improperly denied by the total suspension entered by the referee and approved by the Board.

Down through the years, our Courts have consistently rendered decisions which note that motives with regard to wage differentials are not relevant in interpreting Section 309, nor is a claimant's choice of employment preceding or following injury determinative on questions of what constitutes a pre-injury Average Weekly Wage for compensation purposes, and what constitutes a loss in earning power of a partially disabled employee following injury.

Thus, in *Romig v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934), our Supreme Court then ruled that Section 309 should be interpreted to provide on a purely mechanical basis, quite aside from what might appear to be equity, a computation formula which must prevail whether or not it provides a disability rate of compensation even higher than the full wage earned by the injured worker in his pre-injury job. Thus, as stated by Judge MacPhail quite recently in the case of *Guttman Oil Co v. Workmen's Compensation Appeal Board*, 57 Pa.Commonwealth Ct. 486, 489, 426 A.2d 760, 761–762 (1981):

In *Romig v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934), the Supreme Court addressed a similar provision in the Act where the multiple set forth was five

and a half. In *Romig,* the Claimant worked just two days per week prior to his injury. The Supreme Court held that notwithstanding that fact, the multiple of five and a half was mandatory. Chief Justice Frazer writing for a unanimous Court said

> We are of opinion, after full consideration of the question, that the five and a half day week [10] was intended by the legislature to be the method by which compensation payments are to be fixed, based upon the daily wage. If this method of computation is not applied, injustice and inequalities between employees in the same establishment must result, and there will be no standard of measurement except the number of days worked in the week of the accident. 315 Pa. at 105, 172 A. at 296.

Judge MacPhail stated further as follows:

> It is true, as the employer contends here, that fixing the Claimant's average weekly wage at $301.50 when he actually received only $241.20 may result in the Claimant receiving partial disability benefits greater than the maximum permitted under Section 306(b) of the Act. Even if that is the case, the litigants and this Court are bound by the provisions of Section 309(e) as interpreted by the Supreme Court. As was said in *Romig,* 'We must take the law as we find it and apply the rules there set forth.' 315 Pa. at 103, 172 A. at 295. The apparent inequities must be remedied by the legislature, not this Court.

*Guttman Oil Co.,* 57 Pa.Commonwealth Ct. at 490, 426 A.2d at 762. Obviously, the referee and Board misconstrued the principles to be applied in a case such as this one, in applying here the return to work principles involved in the *Kachinski* [11] line of cases. Those cases, of course, are inapposite as to the Average Weekly Wage computation under Section 309 of the Act. That wage computation is a given in such cases and the issue therein is whether the

---

**10.** The legislature has since then changed the work week days multiplier from 5½ days to 5 days. Section 309(e) of the Act.

**11.** 516 Pa. 240, 532 A.2d 374 (1987).

return to work job, either filled by the employer or offered, warrants entry of a suspension or award for the partial disability. Here, for example, Employer's right to a suspension to the extent of Claimant's reemployment wage is not questioned.

Thus, in a return to work case, *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Kudra)*, 136 Pa.Commonwealth Ct. 720, 584 A.2d 1088 (1990), there was no issue as to computation of the claimant's Average Weekly Wage, but admittedly he had retired without returning to his former time of injury employment which he was capable of performing. Somewhat similar to the contention here, where Claimant's wage differential was by his own choice, it was argued in *Bethenergy* that the claimant's loss in earning power resulted from his voluntary retirement and not because of his disability. Rejecting this contention, the Court stated:

> As in *Wheeling–Pittsburgh*,[12] we conclude that claimant's employment status is irrelevant to a finding of medical disability. Whatever rights were involved in the negotiation of the labor contract are inconsequential in a compensation proceeding.

*Bethenergy*, 136 Pa.Commonwealth Ct. at 727, 584 A.2d at 1091. Accordingly, the decision of the Workmen's Compensation Appeal Board affirming the referee's total suspension order, must be reversed, and this case will be remanded for the computation of partial disability benefits payable to Claimant at the weekly rate of two-thirds of his wage differential, the difference resulting from the reemployment wage lower than the Average Weekly Wage.

## ORDER

AND NOW, this 7th day of May 1991, the decision of the Workmen's Compensation Appeal Board dated June 22, 1990, as of No. A89–1095 is hereby reversed and this case is remanded for computation of partial disability benefits to

---

12. *Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (Smith)*, 70 Pa.Commonwealth Ct. 100, 452 A.2d 611 (1982).

which Claimant is entitled pursuant to the foregoing opinion.

Jurisdiction relinquished.